UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:13-CR-31-GFVT-HAI-2 |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| ANDY RAY LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** ***

On referral from District Judge Van Tatenhove (D.E. 282), the Court considers reported violations of supervised release conditions by Defendant Andy Ray Lewis. Judge Van Tatenhove entered a judgment against Defendant in November 2014 for one count of conspiracy to distribute oxycodone. D.E. 223 at 1. Defendant was sentenced to 20 months of imprisonment, followed by three years of supervised release. *Id*. at 2-3. Defendant began his supervised release term on December 17, 2015. He is now charged with seven alleged violations of the conditions of his supervised release.

**I.**

On April 14, 2016, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated this revocation. The Report charges four violations, and explains the background as follows:

> On March 14, 2016, the defendant provided a urine specimen that was sent to the Regional Drug Testing Laboratory for preliminary testing. Lewis denied any use of controlled substances when asked.

1

Paracelsus Laboratory returned positive results for cocaine, amphetamines, and buprenorphine on March 24, 2016.

Lewis reported to the office, as directed, on April 7, 2016, to discuss the urine specimen he submitted on March 14, 2016. When asked about the defendant's use of controlled substances, he initially denied any illegal use of illicit substances. After further questioning, the defendant admitted to using Suboxone, (buprenorphine) and Claritin (an over-the-counter allergy medication), but denied any other use of substances. Lewis ultimately admitted that he "might have" used cocaine and Adipex (amphetamines). The defendant completed a Positive Urinalysis Admission Report indicating the use of Suboxone (buprenorphine), cocaine, and Adipex (amphetamines). Regarding the use of Adipex, Lewis indicated he was unaware the substance contained amphetamines. It is noted that Alere Laboratory returned positive confirmation for methamphetamine and amphetamines on April 14, 2016.

Continuing on April 7, 2016, Lewis was asked to submit an additional urine specimen for testing. The defendant admitted that he would be positive for Suboxone (buprenorphine), but denied the use of any other controlled substances. Preliminary testing from Paracelsus Laboratory indicated positive results for amphetamines, buprenorphine, and opiates on April 14, 2016.

On April 25, 2016, the USPO issued an Addendum to the Report ("the Addendum"). According to the Addendum, "On April 20, 2016, Alere Toxicology Services confirmed the presence of hydrocodone/hydromorphone" in the urine sample collected on April 7. Two days later, "Alere Toxicology Services confirmed the presence of buprenorphine," but the test results were negative for amphetamines.

First, the Report charges, in Violation #1, a violation of Standard Condition #7, which provides that the defendant "shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." *See* D.E. 223 at 3. To substantiate this violation, the Report relies on Defendant's admission that he used Suboxone, cocaine, and Adipex on or around March 12, 2016. This is a Grade C violation.

2

Second, in relation to Defendant's admitted use of Suboxone (buprenorphine), the Report charges Defendant with a violation of the condition requiring him to refrain from committing another federal, state or local crime. In light of the Sixth Circuit's decision that use of a controlled substance includes possession, and Defendant's criminal history, Violation #2 charges Defendant with conduct that would be a federal crime. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

Third, in relation to Defendant's admitted use of cocaine, the Report charges Defendant with a violation of the condition requiring him to refrain from committing another federal, state or local crime. In light of the Sixth Circuit's decision that use of a controlled substance includes possession, and Defendant's criminal history, Violation #3 charges Defendant with conduct that would be a federal crime. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

Fourth, in relation to Defendant's positive urinalysis results for methamphetamine and amphetamine, the Report charges Defendant with a violation of the condition requiring him to refrain from committing another federal, state or local crime. In light of the Sixth Circuit's decision that use of a controlled substance includes possession, and Defendant's criminal history, Violation #4 charges Defendant with conduct that would be a federal crime. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This would be a Grade B violation.

Fifth, the Addendum charges a violation of Standard Condition #7, which provides that the defendant "shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled

3

substances, except as prescribed by a physician." *See* D.E. 223 at 3. Violation #5 is based on Defendant's April 7, 2016 urine specimen that tested positive for hydrocodone/hydromorphone and buprenorphine. This is a Grade C violation.

Sixth, in relation to Defendant's positive urinalysis results for hydrocodone or hydropmorphone, the Addendum charges Defendant with a violation of the condition requiring him to refrain from committing another federal, state or local crime. In light of the Sixth Circuit's decision that use of a controlled substance includes possession, and Defendant's criminal history, Violation #6 charges Defendant with conduct that would be a federal crime. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This would be a Grade B violation.

Seventh, in relation to Defendant's positive urinalysis results for buprenorphine, the Addendum charges Defendant with a violation of the condition requiring him to refrain from committing another federal, state or local crime. In light of the Sixth Circuit's decision that use of a controlled substance includes possession, and Defendant's criminal history, Violation #7 charges Defendant with conduct that would be a federal crime. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This would be a Grade B violation.

## II.

On April 25, 2016, the Court conducted an initial appearance pursuant to Rule 32.1. At that time, the Addendum had not yet been released, but the probation officer reported the lab results underlying the three charges in the Addendum. D.E. 286. The Court therefore scheduled another initial appearance on the new charges. The United States made an oral motion for interim detention,

and Defendant did not argue for release. *Id.* The Court found that detention was appropriate because Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id.*

On April 27, the Court conducted an initial appearance on the charges in the Addendum. D.E. 287. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *Id*.

At the final hearing on May 10, 2016, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 289. Defendant competently entered a knowing, voluntary, and intelligent stipulation to violations #1, #2, #3, #4, #5, #6, and #7. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report and Addendum. The United States thus established all seven violations under the standard of section 3583(e).

Regarding Defendant's penalty, the government asked for revocation and 10 months of imprisonment, followed by three years of supervised release. Defendant requested revocation with 6 months of imprisonment, followed by drug treatment.

**III.**

The Court has evaluated the entire record, the Report and Addendum and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all of the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute oxycodone, a Class C felony. *See* 21 U.S.C. § 846. Under 18 U.S.C.

5

§ 3583(h) and 21 U.S.C. § 841(b)(1)(C), there is no statutory maximum amount of supervised release that can be imposed upon revocation.

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007) ("[T]he policy statements found in Chapter Seven of the United States Sentencing Guidelines . . . 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).

Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1 and #5, and a Grade B violation with respect to Violations #2, #3, #4, #6, and #7. Given Defendant's criminal history category of II (the category at the time of the conviction in this District) and a Grade B[1] violation, Defendant's Range, under the Revocation Table of Chapter 7, is six to twelve months. Based on his conviction, which is a Class C felony, 18 U.S.C. § 3583(e)(3) provides a maximum incarceration period of 24 months.

The government argued in support of a ten-month period of incarceration. On the positive side, the government noted that Defendant had a relatively low criminal history score, and that he quickly obtained a job upon release. On the negative side, the government remarked that his revocation conduct (drug use) was related to his offense conduct, which was participation in a drug conspiracy. The government noted that, according to Defendant's Presentence Investigation Report ("PSR"), Defendant tried to hide an oxycodone pill in his mouth when he was caught, and this

---

1 *See* USSG § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

6

resembled his initial attempts to hide his violations. The government opined that Defendant's continued drug use creates the danger that he could again become involved in drug distribution.

The government also emphasized that the violations are a serious breach of the Court's trust. This was especially true because Defendant used multiple drugs and failed two separate drug screening tests. Although he now admitted his conduct, Defendant initially denied the violations. The nature of the violations also demonstrated that Defendant needs serious deterrence from his involvement in illegal controlled substances. In light of these factors, the government argued, a penalty above the middle of the Guidelines Range was appropriate.

Defendant's attorney pointed out that Defendant now accepts responsibility for the violations. Defendant had obtained a job as a forklift driver just a week after being released, and was working hard. Defendant's attorney also emphasized that Defendant was clearly an addict. He asked that, in light of his chemical addiction, he be treated leniently with a bottom-of-the-Guidelines-Range penalty followed by drug treatment, the scope of which would be left to the discretion of the USPO. Lewis declined to address the Court himself.

Congress does *mandate* revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was

7

involved in a conspiracy to distribute oxycodone, which is a very serious matter. Although the PSR describes him as a "minimal participant" in the conspiracy, *see* USSG § 3B1.2, the crime remains significant.

The Court next considers Defendant's history and characteristics, and the need to deter criminal conduct and protect the public. The circumstances underlying Defendant's conviction suggest he is an addict whose drug use poses a danger to himself and others. Defendant's drug use while on supervised release is unusually aggravating because he used four different drugs, and one was taken on at least two occasions. This type of use is very unusual and implies a serious underlying problem. The Court is also troubled by defendant's initial denials that he had used drugs.

Another factor to consider is education, treatment, and training for the Defendant. Here, the Court recommends that Defendant must complete a drug treatment program upon his release from incarceration. The nature of the program is left to the discretion of the USPO.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant's conduct here represents a significant breach of the Court's trust. His violation involved the use of multiple drugs on different dates. He was not forthcoming about his drug use when questioned by his probation officer.

A nine-month sentence is at the middle of the Guidelines Range. In this case, Defendant's

mitigating factors (his admitted addiction and his quick attainment of a job) nearly balance out the aggravating factors (his use of multiple controlled substances and his untruthfulness with the USPO). For the reasons discussed above, the Court finds this penalty is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). Moreover, the need to avoid unwarranted sentence disparities among defendants with similar records who have committed similar violations is addressed by the recommendation of a sentence within Defendant's Guidelines Range. However, Defendant is warned that if he violates again, his penalty will be greater.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's convictions carry no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C). The Court recommends that a term of supervised release be re-imposed for a period of 36 months.

Finally, Defendant requested that he be housed as close to home as possible. Accordingly, the undersigned will recommend that Defendant serve his time at the closest possible facility, knowing that this decision lies in the hands of the Bureau of Prisons.

Based on the foregoing, the Court **RECOMMENDS**:

1. Revocation with a term of imprisonment of nine months at the facility closest to Defendant's home;

2. A term of supervised release of 36 months, under the conditions previously imposed at Docket Entry 223, with evaluation by the USPO for drug treatment upon his release.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any

9

waiver should comport with the Court's standard waiver form, available from the Clerk.  Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 11th day of May, 2016.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge